# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CAMERON GRAHAM, as trustee for ANDREW
GRAHAM, JOSEPH PEREZ, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.

DESERT STATE LIFE MANAGEMENT, a
domestic nonprofit corporation; PAUL A.
DONISTHORPE; HELEN BENNETT,
LIANE KERR; SCOTT KOMINIAK; and
JUDY MAHAR,
Defendants,

and

EVANSTON INSURANCE COMPANY,

      Defendant/Counterclaimant/
      Third Party Plaintiff,

v.

CAMERON GRAHAM, as trustee for ANDREW
GRAHAM, JOSEPH PEREZ, DESERT STATE
LIFE MANAGEMENT; PAUL A.
DONISTHORPE; L. HELEN BENNETT; LIANE
KERR; SCOTT KOMINIAK; and JUDY MAHAR

      Counterclaim-Defendants,

    and

CHARLES REYNOLDS, on behalf of J.W.,
VINCENT ESQUIBEL, ISAAC BLACK, on
behalf of and trustee for Jeffrey Black, and
DECADES, LLC, on behalf of and as guardian for
Dale Richards,

      Third Party Defendants.

No. 1:20-cv-00956-KK-JHR

**EVANSTON INSURANCE COMPANY'S ANSWER, COUNTERCLAIM
AND THIRD PARTY COMPLAINT**

Defendant Evanston Insurance Company ("Evanston"), by and through its attorneys of record, Keleher & McLeod, P.A., hereby answers Plaintiffs' Complaint for Declaratory Relief ("Complaint") as follows.

1.      Cameron Graham, as trustee for Andrew Graham, and Joseph Perez, hereby assert this Complaint for Declaratory Relief. In support of their Complaint, Plaintiffs state as follows:

**ANSWER:     Paragraph 1 of the Complaint lacks allegations that require a response from Evanston.**

2.      This Court has jurisdiction under Article VI, Section 13 of the New Mexico Constitution and NMSA 1978, Section 44-6-2.

**ANSWER:     Paragraph 2 of the Complaint contains legal arguments/conclusions that do not require a response.  To the extent that Paragraph 2 contains allegations that require a response, Evanston states that the United States District Court for the District of New Mexico has diversity jurisdiction pursuant to 28 U.S.C. § 1332.**

3.      Venue is proper under NMSA 1978, Section 38-3-1.

**ANSWER:     Paragraph 3 of the Complaint contains legal arguments/conclusions that do not require a response.  To the extent that Paragraph 3 contains allegations that require a response, Evanston states that the United States District Court for the District of New Mexico is the proper venue for this action.**

4.      Andrew Graham is an individual living with special needs and is the lifetime beneficiary of the Andrew Graham Supplemental Needs Trust ("the Graham Trust").

**ANSWER:     Admitted on information and belief.**

5.      Plaintiff Cameron Graham is the trustee of the Graham Trust.

2

**ANSWER:    Admitted on information and belief.**

6.    Plaintiff Joseph Perez is an individual living with cerebral palsy and is a beneficiary of Joseph A. Perez Irrevocable Trust.

**ANSWER:    Admitted on information and belief.**

7.    At all times pertinent to the allegations set forth herein, Defendant Desert State Life Management ("DSLM") was a domestic nonprofit trust company, certified in the State of New Mexico, and doing business in Bernalillo County, New Mexico.

**ANSWER:    Admitted on information and belief.**

8.    On August 4, 2017, Christopher Moya, then acting director of the New Mexico Financial Institutions Division ("FID"), was appointed as liquidating receiver over DSLM.

**ANSWER:    Admitted on information and belief.**

9.    Defendant Paul Donisthorpe was, at all times pertinent to the allegations set forth herein, DSLM's chief executive officer ("CEO") and a Director of DSLM. Donisthorpe is in federal custody.

**ANSWER:    Admitted on information and belief.**

10.    Defendant L. Helen Bennett ("Bennett") was a Director of DSLM. She resides in Bernalillo County, New Mexico.

**ANSWER:    Admitted on information and belief.**

11.    Defendant Scott Kominiak ("Kominiak") managed and functioned as an administrator for DSLM. He resides in Sandoval County, New Mexico.

**ANSWER:    Evanston denies that Scott Kominiak managed and functioned as an administrator for DSLM.  Evanston admits, on information and belief, that Scott Kominiak resides in Sandoval County, New Mexico.**

12.    Defendant Liane Kerr was the spouse of Donisthorpe. She resides in Bernalillo County, New Mexico.

**ANSWER:    Admitted on information and belief.**

13.     Defendant Judy Mahar was the Trust Officer for DSLM. She resides in Bernalillo County, New Mexico.

**ANSWER:     Admitted on information and belief.**

14.     Defendant Evanston Insurance Company ("Evanston") is an Illinois corporation with its principal place of business and center of operations in Deerfield, Illinois.

**ANSWER:     Evanston admits that it is an insurance company organized under the laws of Illinois with its principal place of business in Rosemont, Illinois.  Evanston denies that its principal place of business and center of operations is in Deerfield, Illinois.**

15.     This coverage dispute was filed to determine the total policy coverage available for claims filed in the Second Judicial District Court in the case styled *Graham v. DSLM*, Cause No. D-202-CV-2018-04655 (Dist. Ct. N.M., filed June 20, 2018).

**ANSWER:     Evanston denies that multiple "claims" (a defined term in the insurance policy at issue) have been asserted in *Graham v. DSLM*, Cause No. D-202-CV-2018-04655 (Dist. Ct. N.M., filed June 20, 2018).  Evanston admits that this coverage lawsuit was filed to determine the amount of indemnity coverage potentially available for *Graham v. DSLM* under Specified Professions Professional Liability Insurance Policy No. EO86516 issued by Evanston to Desert State Life Management, Inc.**

16.     The insurance policy at issue, Professional Liability Insurance Policy #EO865156, with a Policy Period of November 1, 2016 to November 1, 2017 (the "Policy"), was issued by Evanston to DSLM on November 1, 2016.

**ANSWER:     Evanston admits that it issued Specified Professions Professional Liability Insurance Policy No. EO86516, with a Policy Period of November 1, 2016 to November 1, 2017 (the "Policy") to Desert State Life Management, Inc. on November 1, 2016.**

17.     The Policy is attached hereto as Exhibit A.

**ANSWER: Evanston denies that a complete copy of the Policy is attached as Exhibit A to Plaintiffs' Complaint as it fails to include the application for the Policy. In further response Evanston states that the Policy at Common Policy Condition F. Entire Agreement expressly provides that "The Declarations, Common Policy Conditions, Coverage Part(s), any written endorsements and any application(s) shall be deemed to be a single unitary contract." In further response to Paragraph 17, Evanston states that a true and complete copy of the Policy is attached hereto as Exhibit 1.**

18.     The Policy is what is colloquially described as a claims made policy.

**ANSWER: Admitted.**

19.     The Policy provides coverage up to $1,000,000 for each claim, and $3,000,000 in coverage in the aggregate.

**ANSWER: Evanston denies that the Policy provides any coverage as it was properly rescinded and therefore is void *ab initio*. In further response to Paragraph 19, Evanston acknowledges that on September 6, 2020, the Court in *Evanston Ins. Co. v. Desert State Life Mngt., et al.,* No. CIV-0864 (D.N.M., filed July 10, 2018) found that Evanston was not entitled to rescind the Policy. Evanston intends to appeal decision to the Tenth Circuit Court of Appeals. In further response, Evanston admits that the Policy as originally issued, subject to its terms, conditions, exclusions and endorsements, provided a $1 million each Claim Limit of Liability and a $3 million aggregate Limit of Liability.**

20.     The defendants named in the operative complaint in *Graham v. DSLM*, Cause No. D-202-CV-2018-04655, who should be covered by the Policy are DSLM, Paul Donisthorpe, Helen Bennett, Liane Kerr, Judy Mahar, and Scott Kominiak.

**ANSWER:    Paragraph 20 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 20 contains allegations that require a response, Evanston denies same.**

21.    The operative complaint in *Graham v. DSLM*, Cause No. D-202-CV-2018-04655 raises 10 separate claims against defendants who should be covered by the Policy.

**ANSWER:    Paragraph 21 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 21 contains allegations that require a response, Evanston denies same.**

22.    Those claims include negligence and gross negligence (against DSLM and Donisthorpe and Bennett and Mahar); breach of fiduciary duty (against DSLM, Donisthorpe, Bennett, Mahar); violations of the New Mexico Uniform Trust Code (against DSLM, Donisthorpe, Bennett, and Mahar); violations of the New Mexico Unfair Practices Act (against DSLM, Donisthorpe); violations of the New Mexico Uniform Voidable Transactions Act (DSLM, Donisthorpe, and Kerr); aiding and abetting breach of fiduciary duty (against Kominiak); professional negligence (against Kominiak); unjust enrichment (against Kerr); breach of contract (against DSLM).

**ANSWER:    Evanston denies that multiple "claims" (a defined term in the insurance policy at issue) have been asserted in *Graham v. DSLM*, Cause No. D-202-CV-2018-04655 (Dist. Ct. N.M., filed June 20, 2018).  Evanston admits that the operative complaint from *Graham v. DSLM* contains causes of action for negligence and gross negligence (against DSLM and Donisthorpe and Bennett and Mahar); breach of fiduciary duty (against DSLM, Donisthorpe, Bennett, Mahar); conversion (against DSLM and Donisthorpe); violations of the New Mexico Uniform Trust Code (against DSLM, Donisthorpe, Bennett, and Mahar); violations of the New Mexico Unfair Practices Act (against DSLM, Donisthorpe); violations of the New Mexico Uniform Voidable Transactions Act (DSLM, Donisthorpe, and Kerr); aiding and abetting breach of fiduciary duty (against Kominiak); professional negligence**

(against Kominiak); unjust enrichment (against Kerr); and breach of contract (against DSLM).

23.     Unless defined out of coverage by an express exception to coverage, the Policy should separately insure each of the 10 aforementioned claims.

**ANSWER:     Paragraph 23 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 23 contains allegations that require a response, Evanston denies same.**

24.     Moreover, and as described more fully below, the plaintiffs in the *Graham* action state multiple, independent theories of liability against Evanston's insureds.

**ANSWER:     Evanston admits that the operative complaint from *Graham v. DSLM* contains multiple causes of action against the various defendants.  Evanston denies that the various causes of action are "independent" of one another as all arise out of the embezzlement scheme perpetrated by Donisthorpe, a convicted felon.  Evanston further denies that any of the defendants in *Graham v. DSLM* are "insureds" as the Policy has been rescinded and is void *ab initio*.**

25.     Based on the law of New Mexico, the Court should enter an order stating that the separate, independent theories of liability advanced by the plaintiffs in *Graham* each trigger separate coverage under the Policy.

**ANSWER:     Paragraph 25 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 25 contains allegations that require a response, Evanston denies same.**

26.     As the CEO of DSLM, Donisthorpe was entrusted to provide trustee services and representative payee services to approximately 75 clients.

**ANSWER:     Admitted on information and belief.**

27.     Donisthorpe held the authority and responsibilities of a trustee over the approximately 75 clients' trusts administered by DSLM pursuant to the provisions of the New Mexico Uniform Trust Code, NMSA 1978, §§ 46A-1-101 to 46A-11–1105 (2003, as amended 2007).

**ANSWER:    Admitted on information and belief.**

28.     DSLM held some client funds in trust in a pooled cash account held by New Mexico Bank and Trust and in individual client investment accounts, held by broker-dealer financial institutions, including Charles Schwab and Vanguard.

**ANSWER:    Admitted on information and belief.**

29.     For some of DSLM clients, DSLM managed a pooled cash account only.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and therefore denies same.**

30.     Only Donisthorpe had authority to make withdrawals from DSLM clients' Charles Schwab and Vanguard broker-dealer investment accounts, and only Donisthorpe had authority to make withdrawals from the pooled cash account.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and therefore denies same.**

31.     From at least 2009 through 2016, Donisthorpe engaged in a scheme in which he improperly diverted client funds into accounts and assets that he owned and controlled.

**ANSWER:    Admitted on information and belief.**

32.     In furtherance of this scheme, Donisthorpe diverted client funds from individual client investment accounts held by broker dealers, including Charles Schwab and Vanguard, to general DSLM accounts and, then, transferred the client funds from DSLM accounts to other non-DSLM accounts that Donisthorpe controlled. These funds were inappropriately used for Donisthorpe's purposes and not for purposes that served the putative class members.

**ANSWER:    Admitted on information and belief.**

33.     In furtherance of this scheme, Donisthorpe transferred client funds held in the pooled cash account into accounts and assets that Donisthorpe owned and controlled.

8

**ANSWER:    Admitted on information and belief.**

34.    In furtherance of this scheme, Donisthorpe used a portion of the funds that he withdrew from DSLM clients' funds—held either in the pooled cash account or in broker-dealer investment accounts, including Charles Schwab and Vanguard investment accounts—to pay other DSLM clients' bills or make cash disbursements to other DSLM clients.

**ANSWER:    Admitted on information and belief.**

35.    Donisthorpe transferred a large portion of the funds that he withdrew from DSLM clients' funds—held either in the pooled cash account or in broker-dealer accounts, including Charles Schwab and Vanguard investment accounts—to bank accounts that Donisthorpe controlled and which were unrelated to DSLM, such as the Spectrum Capital account.

**ANSWER:    Admitted on information and belief.**

36.    Prior to September 2014, DSLM client accounts were recorded and managed through the computerized SunGard accounting system.

**ANSWER:    Admitted on information and belief.**

37.    In September 2014, Donisthorpe deactivated its SunGard accounting system and thereafter ceased recording all DSLM client accounts on computerized accounting software.

**ANSWER:    Admitted on information and belief.**

38.    During September 2014 or thereabouts, Donisthorpe and DSLM directed brokerdealers holding DLSM clients' investments, including Charles Schwab and Vanguard, to cease sending paper statements to DSLM.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 38 and therefore denies same.**

39.    Consequently, among all DSLM officers, directors, and employees, only Donisthorpe could electronically access DSLM clients' account information.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 39 and therefore denies same.**

40.    By September 2014, Donisthorpe and DSLM had nearly depleted the DSLM pooled cash account.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and therefore denies same.**

41.    From September 2014 through 2016, Donisthorpe and DSLM markedly increased both the frequency and dollar amount of illicit withdrawals from DSLM's client's Charles Schwab and Vanguard investment accounts.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore denies same.**

42.    Donisthorpe spent the funds obtained from the scheme on personal items, including business ventures, payments on his home mortgage and the mortgage for his vacation home in Angle Fire, New Mexico, vehicles, payments for credit card expenditures, and payments on debts to the Internal Revenue Service.

**ANSWER:    Admitted on information and belief.**

43.    For example, on or about May 16, 2016, Donisthorpe made a mortgage payment for property related to his cattle business with a $100,000 check from Spectrum Capital, knowing that the funds to cover that payment had been diverted from DSLM client accounts.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and therefore denies same.**

44.    Donisthorpe used a variety of deceptive tactics to conceal this scheme and resulting theft from DSLM clients, including but not limited to, causing DSLM accounting staff to falsely record the client's balances in DSLM accounting records.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 44 and therefore denies same.**

45.    On November 27, 2017, Donisthorpe pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1957.

**ANSWER:    Admitted.**

46.    Donisthorpe and DSLM diverted at least $4,900,000 from DSLM clients.

**ANSWER:    Admitted on information and belief.**

47.    On August 4, 2017, the Honorable Nan Nash, Second Judicial District Court, enjoined Donisthorpe, among others, from conducting business at or on behalf of DSLM and appointed Christopher Moya, acting director of the Financial Institutions Division ("FID"), as liquidating receiver over DSLM.

**ANSWER:    Admitted on information and belief.**

48.    For many years, Donisthorpe, Mahar, and DSLM failed to provide the skill, care, and reasonable level of competence that was required by the circumstances and pursuant to New Mexico law.

**ANSWER:    Paragraph 48 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 48 contains allegations that require a response, Evanston denies same.**

49.    For instance, from September 2014, DSLM did not electronically record activity for DSLM's client accounts.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 49 and therefore denies same.**

50.    DSLM's and Mahar's and Donisthorpe's failure to utilize computerized accounting software to record and manage DSLM client accounts was negligent.

**ANSWER:    Paragraph 50 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 50 contains allegations that require a response, Evanston denies same.  In further response, Evanston states that it lacks knowledge and information sufficient to form a belief as to whether Mahar and Donisthorpe "failed to utilize computerized accounting software to record and manage DSLM client accounts" and therefore denies same.**

51.    DSLM's and Mahar's and Donisthorpe's negligent recordkeeping practices caused inaccurate records to be kept regarding client trust accounts.

**ANSWER:** Paragraph 51 contains legal arguments/conclusions regarding negligence that do not require a response. To the extent Paragraph 51 contains allegations that require a response, Evanston states that it lacks knowledge and information sufficient to form a belief as to whether Mahar's "recordkeeping practices caused inaccurate records to be kept regarding client trust accounts" and therefore denies same.

52. DSLM's and Mahar's and Donisthorpe's negligent recordkeeping practices prevented ledgers for client accounts from being reconciled.

**ANSWER:** Paragraph 52 contains legal arguments/conclusions regarding negligence that do not require a response. To the extent Paragraph 52 contains allegations that require a response, Evanston states that it lacks knowledge and information sufficient to form a belief as to whether Mahar's "recordkeeping practices caused inaccurate records to be kept regarding client trust accounts" and therefore denies same.

53. DSLM and Mahar and Donisthorpe also negligently failed to administer DSLM client trusts solely in the interests of the beneficiaries.

**ANSWER:** Paragraph 53 contains legal arguments/conclusions regarding negligence that do not require a response. To the extent Paragraph 53 contains allegations that require a response, Evanston states that it lacks knowledge and information sufficient to form a belief as to whether Mahar "failed to administer DSLM client trusts solely in the interests of the beneficiaries" and therefore denies same.

54. DSLM and Mahar, and Donisthorpe negligently failed to act in good faith and in accordance with the terms and purposes of their clients' trusts and in the interests of the beneficiaries.

**ANSWER:    Paragraph 54 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 54 contains allegations that require a response, Evanston denies same.**

55.    DSLM and Mahar and Donisthorpe negligently failed to administer DSLM client trusts as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust.

**ANSWER:    Paragraph 55 contains legal arguments/conclusions regarding negligence that do not require a response.  To the extent Paragraph 55 contains allegations that require a response, Evanston states that it lacks knowledge and information sufficient to form a belief as to whether Mahar "failed to administer DSLM client trusts as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust" and therefore denies same.**

56.    DSLM and Mahar and Donisthorpe negligently failed to exercise reasonable care, skill and caution in their administration and management of client trusts.

**ANSWER:    Paragraph 56 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 56 contains allegations that require a response, Evanston denies same.**

57.    DSLM and Mahar and Donisthorpe negligently failed to keep adequate records of the administration of the trust.

**ANSWER:    Paragraph 57 contains legal arguments/conclusions regarding negligence that do not require a response.  To the extent Paragraph 57 contains allegations that require a response, Evanston states that it lacks knowledge and information sufficient to form a belief as to whether Mahar "failed to keep adequate records of the administration of the trust" and therefore denies same.**

58.    DSLM and Mahar and Donisthorpe negligently failed to keep DSLM client trust property separate from DSLM's and Donisthorpe's own property.

**ANSWER:    Paragraph 58 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 58 contains allegations that require a response, Evanston denies same.**

59.    DSLM and Mahar and Donisthorpe negligently failed to keep beneficiaries of the trusts reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests.

**ANSWER:    Paragraph 59 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 59 contains allegations that require a response, Evanston denies same.**

60.    DSLM and Mahar and Donisthorpe negligently failed to send to the distributes or permissible distributes of trust income or principal, and to other qualified or nonqualified beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets and, if feasible, their respective market values.

**ANSWER:    Paragraph 60 contains legal arguments/conclusions regarding negligence that do not require a response.  To the extent Paragraph 60 contains allegations that require a response, Evanston states that it lacks knowledge and information sufficient to form a belief as to whether Mahar and Donisthorpe "failed to send to the distributes or permissible distributes of trust income or principal, and to other qualified or nonqualified beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets and, if feasible, their respective market values" and therefore denies same.**

61.    DSLM's and Mahar's and Donisthorpe's failures as trustee of DSLM's client accounts resulted in substantial damages to the class.

**ANSWER:    Evanston admits that convicted-felon Donisthorpe's embezzlement scheme resulted in substantial damages to the putative class.  Evanston denies the remaining allegations of Paragraph 61.**

62.    At all times during which Donisthorpe diverted DSLM's client's funds, Bennett was a director of DSLM.

**ANSWER:    Admitted on information and belief.**

63.    Though she was a director of DSLM, Bennett exercised little to no oversight of the actions of Donisthorpe or DSLM.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 63 and therefore denies same.**

64.    Bennett failed to perform the duties as a director of DSLM that were required of her by law.

**ANSWER:    Paragraph 64 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 64 contains allegations that require a response, Evanston denies same.**

65.    Bennett failed to perform her duties as a DSLM director in good faith and in a manner to be in or not opposed to the best interest of DSLM's clients.

**ANSWER:    Paragraph 65 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 65 contains allegations that require a response, Evanston denies same.**

66.    Bennett failed to perform her duties to DSLM's clients as a prudent person in a director's position would and failed to exercise reasonable care, skill, and caution in performing her duties to DSLM's clients.

**ANSWER:    Paragraph 66 contains legal arguments/conclusions that do not require a response.    To the extent Paragraph 66 contains allegations that require a response, Evanston denies same.**

67.    Bennett failed to oversee DSLM's property; liabilities; receipts and disbursements, including the source and amount of DSLM's officers' compensation; a listing of DSLM clients' assets; and the market value of DSLM clients' assets.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 67 and therefore denies same.**

68.    Bennett failed to exercise her office as a director of DSLM to investigate or oversee either the status and financial health of the company or Donisthorpe's gross mismanagement, comingling, and diversion of the funds of DSLM's clients.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 68 and therefore denies same.**

69.    Bennett once considered Donisthorpe and his spouse, Liane Kerr, among her closest friends in New Mexico.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 69 and therefore denies same.**

70.    By the Spring of 2017, Bennett was aware that Donisthorpe did not earn sufficient income through legitimate enterprises to sustain the lifestyle of travel and luxury of Donisthorpe and Kerr and allow them to purchase, furnish, decorate and maintain multiple real estate properties, horses, expensive jewelry, art, vehicles and horse trailers and that Kerr also knew or should have known this fact.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 70 and therefore denies same.**

71.    Nevertheless, Bennett did not exercise her office as a director of DSLM to investigate or oversee either the status and financial health of the company or Donisthorpe's gross mismanagement, comingling, and diversion of the funds of DSLM's clients.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 71 and therefore denies same.**

72.    Bennett's failures and negligence as a DSLM director resulted in damages to the plaintiffs in the *Graham* action in excess of $4,900,000.

**ANSWER:    Paragraph 72 contains legal arguments/conclusions that do not require a response.    To the extent Paragraph 72 contains allegations that require a response, Evanston denies same.**

73.    At all relevant times, Kominiak was DSLM's accountant and a longtime personal friend of Donisthorpe.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 73 and therefore denies same.**

74.    As accountant for DSLM, Kominiak:
   a.    Had access to DSLM's recordkeeping;
   b.    Reviewed DSLM's financial statements;
   c.    Made representations about DSLM's financial statements; and
   d.    Was required to satisfy and maintain compliance with the qualifications for a CPA set forth in the New Mexico Public Accountancy Act, NMSA 1978, § 61-28B-8.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 74 (including subparagraphs a-d) and therefore denies same.**

75.    Even though he had access to and authority over DSLM's finances, Kominiak failed to reasonably audit and account for DSLM's books and finances and failed to reasonably investigate and determine that Donisthorpe was diverting significant amounts of clients' trust funds to accounts that Donisthorpe controlled personally.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and therefore denies same.**

17

76.     Even though he had access to and authority over DSLM's finances, Kominiak failed to inform New Mexico authorities, including FID, when he first knew and realized that Donisthorpe had diverted significant amounts of clients' trust funds to accounts that Donisthorpe controlled personally.

**ANSWER:     Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 76 and therefore denies same.**

77.     On March 22, 2017, Bennett responded to Kominiak's request to call her as soon as possible. On that phone call, Kominiak informed Bennett that he had just met with Donisthorpe and Kerr and told Donisthorpe and Kerr that it appeared that between $500,000.00 and $700,000.00 had been improperly transferred from client trust accounts held by DSLM to accounts controlled by Donisthorpe.

**ANSWER:     Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 77 and therefore denies same.**

78.     Kominiak also indicated to Bennett that there was "liquidity" in the form of cattle in Texas that were scheduled to be auctioned between April and August 2017 and that the amounts missing from the client trust accounts could be replenished fully by the proceeds of the cattle sales.

**ANSWER:     Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 78 and therefore denies same.**

79.     Kominiak also told Bennett that he could "hold things up" by requiring subpoenas and formal requests from auditors.

**ANSWER:     Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 79 and therefore denies same.**

80.     Kominiak attempted to assure Bennett that DSLM would retrieve the diverted client funds and asked Bennett not to contact the authorities.

**ANSWER:     Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 80 and therefore denies same.**

81.     On March 27, 2017, Bennett contacted FID and the New Mexico Regulation and Licensing Division (RLD), conveying what Kominiak told her.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 81 and therefore denies same.**

82.    On March 28, 2017, FID took control of DSLM's documents.

**ANSWER:    Admitted on information and belief.**

83.    Between on or about February 21, 2017, when Donisthorpe attempted suicide, and March 28, 2017, both Kerr and Kominiak had access to and control over the DSLM office.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 81 and therefore denies same.**

84.    During the time he had access to and authority over DSLM's finances and after he took control of the company, Kominiak knew or should have known of the improper and unlawful actions taken by Donisthorpe and DSLM, yet Kominiak did not take any steps to remedy or prevent Donisthorpe and DSLM from further harming DSLM's clients.

**ANSWER:    Evanston denies that Kominiak had "authority over DSLM's finances" and that he "took control of the company."  Evanston lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 84 and therefore denies same.**

85.    Kominiak's negligence caused substantial damages to the plaintiffs in the *Graham* action.

**ANSWER:    Paragraph 85 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 85 contains allegations that require a response, Evanston denies same.**

86.    DSLM managed a unique brand of trust accounts, special and supplemental needs trusts.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 86 and therefore denies same.**

87.     The heightened duty owed by this type of fiduciary is particularly susceptible to abuse when the relationship includes a vulnerable principal who has a great disparity of knowledge and inability to review the actions of the fiduciary.

**ANSWER:     Paragraph 87 contains legal arguments/conclusions that do not require a response.   To the extent Paragraph 87 contains allegations that require a response, Evanston denies same.**

88.     DSLM was also otherwise operated in an unsafe and unsound manner.

**ANSWER:     Evanston objects to the term "otherwise" as vague and ambiguous. Subject to and without waiving this objection, Evanston admits that DSLM was operated in an unsafe and unsound manner.**

89.     Donisthorpe has admitted that he had been generally negligent in running DSLM, separate and apart from his defalcation, and that his negligence was a cause of substantial damages to the DLSM trust accounts.

**ANSWER:     Denied.**

90.     This is most obviously demonstrated by the fact that DSLM, a trust management company operating in the 21st century, did not maintain any electronic records.

**ANSWER:     Evanston objects to Paragraph 90 as vague and ambiguous because it presupposes an admission to Paragraph 89.  Subject to, and without waiving this objection, Evanston states that it lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and therefore denies same**

91.     DSLM also failed to maintain adequate and qualified staffing.

**ANSWER:     Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 86 and therefore denies same.**

92.     DSLM had a duty to hire qualified personnel to administer and manage the trust accounts in its care.

20

**ANSWER:    Paragraph 92 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 92 contains allegations that require a response, Evanston denies same.**

93.    DSLM failed to hire qualified personnel to administer and manage the trust accounts in its care.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 93 and therefore denies same.**

94.    DSLM did not pay all of its bills in a timely fashion, causing the trust accounts under its management to bear responsibility for late fees and penalties.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 94 and therefore denies same.**

95.    These types of poor business practices constitute gross negligence and breaches of DSLM's fiduciary duty to the class members.

**ANSWER:    Paragraph 95 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 95 contains allegations that require a response, Evanston denies same.**

96.    DSLM was required to maintain a minimum of 3 board members.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 96 and therefore denies same.**

97.    DSLM did not maintain the requisite number of board members.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 97 and therefore denies same.**

98.    In fact, one of DSLM's board members, Tom Rutherford, was medically infirm.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 98 and therefore denies same.**

99.    Rutherford was incapable of functioning as a reasonable board member would under the circumstances.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 99 and therefore denies same.**

100.    DSLM never relieved Rutherford of his duties.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 100 and therefore denies same.**

101.    Instead, Rutherford just stopped attending board meetings and attending to board matters.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 101 and therefore denies same.**

102.    To make matters worse, DSLM did not have any board or director meetings at all after December of 2015.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 102 and therefore denies same.**

103.    DSLM did not have any policies and procedures to govern its business practices.

**ANSWER:    Evanston lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 103 and therefore denies same.**

104.    DSLM's poor corporate structure, inadequate and unqualified personnel, and other business practices related failures caused substantial damages to the plaintiffs in the *Graham* action.

**ANSWER:   Evanston admits that convicted-felon Donisthorpe's embezzlement scheme resulted in substantial damages to the plaintiffs in *Graham v. DSLM*.   Evanston denies the remaining allegations of Paragraph 104.**

105.    Each of the claims in the Graham class action, and in particular, those set out in detail herein, constitute separate claims under the Policy.

**ANSWER:   Paragraph 105 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 105 contains allegations that require a response, Evanston denies same.**

106.    The aggregate $3,000,000 limit available under the Policy should available to cover claims made in the *Graham* lawsuit.

**ANSWER:   Paragraph 106 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 106 contains allegations that require a response, Evanston denies same.**

**Count I
Declaratory Relief**

107.    The Policy at issue provides coverage up to $1,000,000 for each claim, and $3,000,000 in coverage in the aggregate.

**ANSWER:   Evanston denies that the Policy provides any coverage as it was properly rescinded and therefore is void *ab initio*.  In further response to Paragraph 19, Evanston acknowledges that on March 23, 2020, the Court in *Evanston Ins. Co. v. Desert State Life Mngt., et al.,* No. CIV-0864 (D.N.M., filed July 10, 2018) found that Evanston was not entitled to rescind the Policy.  Evanston intends to appeal aspects of the decision to the Tenth Circuit Court of Appeals.  In further response, Evanston admits that the Policy as**

**originally issued, subject to its terms, conditions, exclusions and endorsements, provided a**

**$1 million each Claim Limit of Liability and a $3 million aggregate Limit of Liability.**

108.    The plaintiffs in the *Graham* lawsuit have made more than three claims that trigger coverage pursuant to the Policy.

**ANSWER:    Paragraph 108 contains legal arguments/conclusions that do not require a response.  To the extent Paragraph 108 contains allegations that require a response, Evanston denies same.**

109.    The damages resulting from the facts giving rise to each claim in the Graham lawsuit total in excess of $3,000,000.

**ANSWER:    Evanston denies that multiple "claims" (a defined term in the insurance policy at issue) have been asserted in *Graham v. DSLM*.  Evanston admits, on information and belief, that the plaintiffs in *Graham v. DSLM* have suffered damages in excess of $3 million as a result of the embezzlement scheme perpetrated by convicted-felon Donisthorpe.**

110.    Plaintiffs therefore seek a declaration from the Court that there are at least 3 claims in the *Graham* lawsuit.

**ANSWER:    Evanston denies that Plaintiffs are entitled to a declaration from the Court that there are at least 3 "claims" (as that term is defined by the Policy) asserted in *Graham v. DSLM*.**

111.    Plaintiffs further seek a declaration from the Court that the Policy's $3,000,000 aggregate limit is available to cover damages awarded by the claims made in the *Graham* lawsuit.

**ANSWER:    Evanston denies that Plaintiffs are entitled to a declaration from the Court that the Policy's $3,000,000 aggregate limit is available to cover damages awarded by the claims made in the *Graham* lawsuit.**

## **AFFIRMATIVE DEFENSES**

Evanston asserts the following affirmative defenses, without now assuming the burden of proof on any such defense that otherwise rests on Plaintiffs, and with the reservation of its right to amend or supplement its Answer to Plaintiffs' Complaint, including its affirmative defenses, as information is gathered through discovery:

1.      The Policy is rescinded and is void *ab initio.*

2.      In the alternative to Affirmative Defense No. 1, there is no coverage under the Policy for *Graham v. DSLM* because the Policy's Insuring Agreement has not been triggered.

3.      In the alternative to Affirmative Defense No. 1, there is no coverage under the Policy for *Graham v. DSLM* by operation of Exclusion P of the Policy.

4.      In the alternative to Affirmative Defense No. 1, there is no coverage under the Policy for *Graham v. DSLM* by operation of Exclusion J of the Policy.

## **EVANSTON'S COUNTERCLAIM AND THIRD PARTY COMPLAINT FOR DECLARATORY RELIEF**

Evanston hereby brings a counterclaim for declaratory relief against Cameron Graham, as trustee for Andrew Graham ("Graham"), Joseph Perez ("Perez"), Desert State Life Management ("DSLM"), Paul A. Donisthorpe ("Donisthorpe"), L. Helen Bennett ("Bennett"), Liane Kerr ("Kerr"), Scott Kominiak ("Kominiak") and Judy Mahar ("Mahar")[1] for declaratory relief and

---

[1] DSLM, Donisthorpe, Bennett, Kerr, Kominiak and Mahar are identified as defendants in the caption to the Complaint. However, in its Removal Petition (Doc. No. 1), Evanston seeks to have the parties realigned as plaintiffs according to their real interest in the litigation. *See Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d 1384, 1387-88 (10th Cir. 1978) (coverage dispute between insurer and insured dictated that the insured party be aligned with injured parties for purposes of diversity jurisdiction). Accordingly, Evanston brings its declaratory judgment action against these parties as a counterclaim.

25

third party complaint for declaratory relief against Charles Reynolds, on behalf of J.W. ("Reynolds"), Vincent Esquibel ("Esquibel"), Isaac Black, on behalf of and trustee for Jeffrey Black ("Black"), and Decades, LLC, on behalf of and as guardian for Dale Richards ("Decades"). In support of its counterclaim and third party complaint, Evanston states as follows:

## ALLEGATIONS COMMON TO COUNTERCLAIM AND THIRD PARTY COMPLAINT

### Chronology of Related Litigation

1.      On November 27, 2017, in an action styled *U.S. v. Donisthorpe,* No. 1:17-CR-03311 (D.N.M. filed Nov. 27, 2017), the United States Attorney for the District of New Mexico filed a two-count federal felony information against Donisthorpe charging him with wire fraud and money laundering.  (A true and correct copy of the *Donisthorpe* Criminal Information is attached as **Exhibit 2**.)

2.      The same day, November 27, 2017, Donisthorpe pleaded guilty to both counts.

3.      In his plea agreement ("11/27/2017 Plea Agr."), a true and correct copy of which is attached as **Exhibit 3**), Donisthorpe admitted that:

      a.  from at least 2009 through 2016, he violated his duty of trust to DSLM clients by fraudulently transferring client funds from individual client investment accounts to accounts he controlled, converting those client funds to his own use; (Ex. 3 – 11/27/2017 Plea Agr., ¶10.b.)

      b.  he made the fraudulent transfers knowing that he was not entitled to the funds; knowing that the clients were not informed of the transfers and knowing that

the clients would not have approved of the transfers if they had been informed; (Ex. 3 – 11/27/2017 Plea Agr., ¶10.c.)

c.  he presented false and fraudulent investment and disbursement reports to the DSLM board of directors, and presented materially false and fraudulent documents to the New Mexico Regulation and Licensing Department – Financial Institutions Division in order to conceal the fact that he had fraudulently obtained client funds; (Ex. 3 – 11/27/2017 Plea Agr., ¶10.c.) and

d.  he spent the illegally obtained funds on personal items including business ventures, his home mortgage, the mortgage for a vacation home, vehicles, credit card expenditures, and his IRS debts. (Ex. 3 – 11/27/2017 Plea Agr., ¶10.d.)

4.    Donisthorpe's embezzlement scheme generated multiple demands for restitution and lawsuits by DSLM's former clients; all of these matters are now consolidated into a purported class action – *Graham v. Desert State Life Management,* No. D-202-CV-2018-04655 (Bernalillo Cnty., N.M. Dist. Ct., filed June 20, 2018) ("*Graham v. DSLM*").  (A true and correct copy of the operative complaint from the Underlying Claim – the *Graham* Second Amended Class Action Complaint, filed on September 14, 2020 – is attached as **Exhibit 4**.)

5.    The allegations of the Underlying Claim mirror the admissions from Donisthorpe's guilty plea:

From at least 2009 through 2016, Donisthorpe also engaged in a scheme in which he knowingly, intentionally, and improperly diverted client funds into accounts and assets that he owned and controlled.

In furtherance of this scheme, Donisthorpe diverted client funds from individual client investment accounts held by broker dealers, including Charles Schwab and Vanguard, to general DSLM accounts and, then, transferred the client funds from

DSLM accounts to other non-DSLM accounts that Donisthorpe controlled. These funds were inappropriately used for Donisthorpe's purposes and not for purposes that served the putative class members.

(Ex. 4, ¶¶38-39.)

6.    On July 10, 2018, Evanston filed suit for rescission of the Policy or, in the alternative, a declaration regarding its **defense** obligations for *Graham v. DSLM* under Professional Liability Insurance Policy No. EO865156 (the "Policy" attached as Ex. 1), issued by Evanston to Desert State Life Management in an action styled *Evanston Ins. Co. v. Desert State Life Management,* No. 1:18-cv-00654 (D.N.M. filed July 10, 2018) ("*Evanston v. DSLM*"). (A true and correct copy of the operative complaint from *Evanston v. DSLM* – the Third Amended Complaint, filed on February 15, 2019 – is attached as **Exhibit 5**.)

7.    Plaintiffs Graham and Perez, Counterclaim Defendants DSLM, Donisthorpe, Bennett and Kerr and Third-Party Defendants Reynolds, Esquibel (through his Guardian *ad litem*, Scott K. Atkinson) and Decades were all parties to *Evanston v. DSLM*. (Ex. 5.)

8.    A bench trial of *Evanston v. DSLM* was held on October 7-9, 2019 before the Honorable James O. Browning.

9.    On September 6, 2020, Judge Browning issued his Memorandum Opinion, Findings of Fact, Conclusions of Law in *Evanston v. DSLM* ("9/6/2020 Order"), a true and correct copy of which is attached as **Exhibit 6**.

10.    Evanston intends to appeal aspects of Judge Browning's 9/6/2020 Order as well as two interlocutory orders dated January 16, 2020 and March 20, 2020, respectively.

11.     The current lawsuit, filed by Graham and Perez,[2] seeks a declaration regarding the amount of *indemnity* coverage potentially available for *Graham v. DSLM* under the Policy.

12.     Although not directly related to the coverage dispute between Evanston and the Counterclaimant/Third-Party Defendants, a fifth lawsuit arising out of Donisthorpe's embezzlement scheme is currently pending in this Court, *Cincinnati Ins. Co. v. Desert State Life Management,* No. 1:18-CV-00981 (D.N.M. filed Oct. 22, 2018) ("*Cincinnati v. DSLM*") (A true and correct copy of the operative complaint (the Amended Complaint) from *Cincinnati v. DSLM,* without exhibits, is attached as **Exhibit 7**.)

13.     In *Cincinnati v. DSLM,* DSLM's non-profit directors and officers liability insurer, Cincinnati Insurance Company, seeks a declaration that its policy does not provide coverage for *Graham v. DSLM* or any other claim arising out of Donisthorpe's embezzlement scheme. (Ex. 6, ¶¶64-92.)

## The Parties

14.     Counterclaimant/Third-Party Plaintiff Evanston is an insurance company organized under the laws of Illinois with its principal place of business in Rosemont, Illinois.

15.     On information and belief, Counterclaim Defendant Cameron Graham ("Graham") is a resident of Santa Fe County, New Mexico.

---

[2] Although the Complaint is captioned to suggest that this coverage lawsuit is brought as a purported class action, the Complaint contains no class allegations. However, the underlying lawsuit, *Graham v. DSLM,* is a purported class action in which Graham and Perez along with Reynolds, Esquibel, Black and Decades seek to represent a class of similarly situated individuals who were victimized by the embezzlement scheme perpetrated by Donisthorpe.

16.     On information and belief, Andrew Graham is a resident of Santa Fe County, New Mexico.

17.     On information and belief, Counterclaim Defendant Joseph Perez ("Perez") is a resident of Bernalillo County, New Mexico.

18.     At all relevant times, Counterclaim Defendant Desert State Life Management ("DSLM") was a domestic nonprofit trust company, certified in the state of New Mexico, and doing business in Bernalillo County, New Mexico.

19.     On information and belief, Counterclaim Defendant Paul Donisthorpe ("Donisthorpe") is a citizen of Bernalillo County, New Mexico but currently resides in the Englewood Federal Correctional Institution in Littleton, Colorado.

20.     On information and belief, Counterclaim Defendant L. Helen Bennett ("Bennett") is a resident of Bernalillo County, New Mexico.

21.     On information and belief, Counterclaim Defendant Scott Kominiak ("Kominiak") is a resident of Sandoval County, New Mexico.

22.     On information and belief, Counterclaim Defendant Liane Kerr ("Kerr") is a resident of Bernalillo County, New Mexico.

23.     On information and belief, Counterclaim Defendant Judy Mahar ("Mahar") is a resident of Bernalillo County, New Mexico.

24.     On information and belief, Third-Party Defendant Reynolds is a resident of Bernalillo County, New Mexico and serves as the court-appointed conservator for J.W., an incapacitated person.

25.     On information and belief, J.W. is a resident of Bernalillo County, New Mexico.

30

26.     On information and belief, Third-Party Defendant Vincent Esquibel is a resident of Bernalillo County, New Mexico.

27.     On information and belief, Third-Party Defendant Isaac Black is a resident of Valencia County, New Mexico and serves as the conservator for Jeffrey Black, an incapacitated person.

28.     On information and belief, Third-Party Defendant Decades, LLC ("Decades") is a New Mexico domestic corporation, with its primary place of business in Bernalillo County, New Mexico and serves as the guardian for Dale Richards.

**29.**     On information and belief, Dale Richards is a resident of Bernalillo County, New Mexico.

### Jurisdiction and Venue

30.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

31.     Venue is proper in this district pursuant to 28 U.S.C. § 1381, because a substantial part of the events giving rise to this coverage dispute occurred in this judicial district.

### Donisthorpe's Embezzlement Scheme

32.     DSLM is a non-profit trust corporation that acts as a trustee for disabled individuals. (Ex. 6 – 9/6/2020 Order, Finding of Fact ("FOF") ¶1.)

33.     For all relevant times, Paul A. Donisthorpe ("Donisthorpe") served as the Chief Executive Officer of DSLM, including the time period from 2008 to the end of March 2017. (Ex. 6 – 9/6/2020 Order, FOF ¶2.)

34.     In his capacity as CEO, Donisthorpe was entrusted to provide trustee services and representative payee services to more than 75 DSLM clients. (Ex. 6 – 9/6/2020 Order, FOF ¶3.)

35.     Beginning in 2009 or earlier and continuing through 2016, Donisthorpe engaged in a scheme in which he knowingly and intentionally misappropriated and converted DSLM client funds for his own personal use. (Ex. 6 – 9/6/2020 Order, FOF ¶4.)

36.     Donisthorpe's scheme involved transferring client funds from individual client investment accounts at various financial institutions, including the Vanguard Group and the Charles Schwab Corporation, to pooled DSLM accounts in which the individual client's funds were commingled with other monies entrusted to DSLM. (Ex. 6 – 9/6/2020 Order, FOF ¶5.)

37.     DSLM commingled individual client funds with other monies entrusted to DSLM. (Ex. 6 – 9/6/2020 Order, FOF ¶5.)

38.     Donisthorpe then transferred the commingled client funds into non-DSLM accounts that he controlled.  (Ex. 6 – 9/6/2020 Order, FOF ¶6.)

39.     Donisthorpe then diverted the client funds from the non-DSLM accounts to other bank accounts, credit card accounts and mortgages, none of which were associated with DSLM. (Ex. 6 – 9/6/2020 Order, FOF ¶7.)

40.     Donisthorpe spent the money obtained from his embezzlement scheme to purchase cattle and a ranch in Texas, a vacation home, vehicles, a custom horse trailer, a trip to the World Series and to pay off personal debts.  (Ex. 6 – 9/6/2020 Order, FOF ¶8.)

41.     Through his scheme, Donisthorpe misappropriated and converted over $4.9 million in DSLM client funds for his own personal use. (Ex. 6 – 9/6/2020 Order, FOF ¶12.)

42. Specifically, $4,933,626.58 in funds from DSLM client accounts were unlawfully taken. (Ex. 6 – 9/6/2020 Order, FOF ¶13.)

43. Donisthorpe made the fraudulent transfers knowing that he was not entitled to the funds; knowing that the clients were not informed of the transfers and knowing that the clients would not have approved of the transfers if they had been informed.  (Ex. 6 – 9/6/2020 Order, FOF ¶15.)

44. On November 17, 2017, Donisthorpe pleaded guilty to a two-count federal felony information charging him with wire fraud and money laundering.  (Ex. 3 – 11/27/2017 Plea Agr., at 5; Ex. 6 – 9/6/2020 Order, FOF ¶100.)

45. On June 27, 2019, the court in *U.S. v. Donisthorpe* sentenced Donisthorpe to 144 months in prison and imposed a money judgment against Donisthorpe in the amount of $4,812,857.00, which the Court described as a "portion of the net profit of the defendant derived from the offense charged in Counts 1 and 2."  (Judgment, *U.S. v. Donisthorpe,* No. 1:17-cv-03311 (D.N.M.), filed June 27, 2019, a true and correct copy of which is attached as **Exhibit 8;** Ex. 6 – 9/6/2020 Order, FOF ¶103.)

### *Graham v. DSLM*

46. *Graham v. DSLM*, was filed on June 20, 2018.

47. On September 14, 2020, the plaintiffs in *Graham v. DSLM* filed their Second Amended Class Action Complaint that, *inter alia,* added former DSLM employee Mahar as a defendant. (Ex. 4.)

48.     On information and belief, prior to September 14, 2020,  Mahar had not received any written demand in connection with any losses suffered by DSLM clients, nor had any suit or arbitration been initiated against her in connection with any such losses.

49.     In *Graham v. DSLM,* the underlying plaintiffs allege as Judge Browning found in *Evanston v. DSLM*, that "Donisthorpe and DSLM diverted at least $4,900,000 from DSLM clients."  (Ex. 4, ¶56; Ex. 6 – 9/6/2020 Order, FOF ¶12.)

50.     In addition to suing Donisthorpe and DSLM for conversion (Ex. 4, ¶¶202-06) and violation of the New Mexico Unfair Practices Act (Ex. 4, ¶¶212-17) and Uniform Voidable Transaction Act (Ex. 4, ¶¶218-227), the *Graham v. DSLM* plaintiffs assert causes of action against DSLM, Donisthorpe, Bennett and Mahar for negligence and gross negligence (Ex. 4, ¶¶189-95), breach of fiduciary duty (Ex. 4, ¶¶196-201) and violation of the New Mexico Uniform Trust Code (Ex. 4, ¶¶207-11).

51.     The *Graham v. DSLM* Second Amended Complaint also includes an unjust enrichment count against Kerr (Ex. 4, ¶¶246-53) and breach of contract count against DSLM.  (Ex. 4, ¶¶254-59).

52.     In *Graham v. DSLM,* plaintiffs seek, actual damages, treble damages, disgorgement of any profits "made as a result of [the underlying defendants'] management of Class Members' accounts," attorneys fees and costs.  (Ex. 4 at 39.)

**The Evanston Policy**

53.     On October 10, 2016 – seven years into his embezzlement scheme – Donisthorpe, in his capacity as DSLM's CEO, submitted an application for professional liability insurance coverage to Evanston.  (Ex. 6 – 9/6/2020 Order, FOF ¶17.)

54.    In the application, Donisthorpe and DSLM made the following representation:

Is the Applicant or any principal, partner, owner, officer, director, employee, manager or managing member of the Applicant or any person(s) or organization(s) proposed for this insurance aware of any fact, circumstance, situation, incident or allegation of negligence or wrongdoing, which might afford grounds for any claim such as would fall under this proposed insurance? …………………Yes [ ]  No [✔]

(Ex. 1 at 3; Ex. 6 – 9/6/2020 Order, FOF ¶22.)

55.    The Application also included the following:

**NOTICE TO THE APPLICANT – PLEASE READ CAREFULLY**
No fact, circumstance or situation indicating the probability of a claim or action for which coverage may be afforded by the proposed insurance is now known by any person(s) or entity(ies) proposed for this insurance other than that which is disclosed in this application. It is agreed by all concerned that if there be knowledge of any such fact, circumstance or situation, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed.

* * *

This application, information submitted with this application and all previous applications and material changes thereto of which the underwriting manager, Company and/or affiliates thereof receives notice is on file with the underwriting manager, Company and/or affiliates thereof and is considered physically attached to and part of the policy if issued. The underwriting manager, Company and/or affiliates thereof will have relied upon this application and all such attachments in issuing the policy.

* * *

**WARRANTY**
I/We warrant to the Company, that I/We understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy Band deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/We authorize the release of claim information from any prior insurer to the underwriting manager, Company and/or affiliates thereof.

(Ex. 1 at 4; Ex. 6 – 9/6/2020 Order, FOF ¶23.)

56.    At the time Donisthorpe completed the Application, he knew that his scheme to misappropriate and convert over $4.9 million in DSLM client funds exposed DSLM to lawsuits. (Ex. 6 – 9/6/2020 Order, FOF ¶25.)

57.    Based upon the representations and warranties made by Donisthorpe, individually and on behalf of DSLM,  in the Application, Evanston issued the Policy.  (Ex. 6 – 9/6/2020 Order, FOF ¶26.)

58.    Had Evanston been aware of Donisthorpe's commingling, misappropriation and conversion of DSLM client funds, or even if funds were simply missing from DSLM client accounts, it would not have issued the Policy.  (Ex. 6 – 9/6/2020 Order, FOF ¶27.)

59.    The Common Policy Provisions of the Policy include the following:

REPRESENTATIONS

By acceptance of this policy, the Insureds agree as follows:

1.  That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2.  That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

(Ex. 1 – Policy at Common Policy Conditions, E; Ex. 6 – 9/6/2020 Order, FOF ¶45.)

60.    The Policy provides:

The inclusion herein of more than one Insured in any Claim or the making of Claims by, or reporting of Loss incurred by more than one person or organization or under more than one purchased Coverage Part of this policy, shall not operate to increase the Limits of Liability stated in this Policy.

(Ex. 1 – Policy at Common Policy Conditions, C.)

36

61.    The Policy contains the following provision:

Limit of Liability – Professional Liability Coverage – Each Claim:   The total liability of the Company under this Coverage Part for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Each Claim.

(Ex. 1 – Policy at Professional Liability Insurance Coverage Part for Specified Professions

(hereinafter "Coverage Part A"), Limits of Liability A.

62.    The Each Claim Limit of Liability stated in Item 5.A. of the Declarations is

$1,000,000.  (Ex. 1 – Policy at Declarations, Item 5.A.)

63.    Policy provides:

The unqualified word "Insured," either in the singular or plural, means:

1.  The Named Insured herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;

2.  Any past or current principal, partner, officer, director, trustee or shareholder of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;

3.  Any past or current employee, including a leased employee, of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;

4.  Any natural person who is an independent contractor of the Named Insured solely while acting within their professional capacity on behalf of the Named Insured;

5.  If the Named Insured stated in Item 1. of the Declarations is a limited liability company, the limited liability company so stated, any past or current manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of such limited liability company and any past or current member thereof, solely while acting on behalf of the Named Insured

and within the scope of their duties as a member of such limited liability company;

6. The heirs, executors, administrators, assigns and legal representatives of each Insured in Items A.1.-5. above in the event of death, incapacity or bankruptcy of each such Insured but only for each such Insured's liability as is otherwise covered herein;

7. The lawful spouse or Domestic Partner of each Insured in Item A.2. above, but only for each such Insured's liability as is otherwise covered herein.

(Ex. 1 – Policy at Coverage Part A, The Insured, A; Ex. 6 – 9/6/2020 Order, FOF ¶46.)

64. The Policy identifies the "Named Insured" as DSLM. (Ex. 1 – Policy at Declarations, Item 1; Ex. 6 – 9/6/2020 Order, FOF ¶47.)

65. The Policy defines the term "Claim" as follows:

Claim means the Insured's receipt of:

1. A written demand for money damages or remedial Specified Professional Services involving this Coverage Part, including a written demand that the Insured toll or waive a statute of limitations; or

2. The service of suit or the institution of arbitration proceedings against the Insured;

Provided, however, Claim shall not include Disciplinary Proceeding.

(Ex. 1 – Policy at Coverage Part A, Definition B; Ex. 6 – 9/6/2020 Order, FOF ¶48.)

66. The Policy defines the term "Claim Expenses" as follows:

Claim Expenses means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include:

1. Salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or

2. Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

(Ex. 1 – Policy at Coverage Part A, Definition C.)

67.    The Policy defines the term "Damages" as follows:

Damages means the monetary portion of any judgment, award or settlement, including punitive or exemplary damages where insurable, provided, however, Damages shall not include:

1. Multiplied portions of damages in excess of actual damages, including trebling of damages;

2. The cost of any modifications or changes to the Insured's security measures, procedures, software or hardware required or agreed to by the Insured to satisfy a judgment, award or settlement;

3. Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

4. Taxes, criminal or civil fines assessed against an Insured, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

5. Sanctions;

6. Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;

7. The return, withdrawal, reduction, restitution or payment of any fees, profits, charges or royalties for services or consideration and/or any expenses paid or payable to the Insured for services or goods;

8. Any cost to correct, perform or re-perform services of a professional nature when the Insured had the capability to correct, perform or re-perform the services of a professional nature with respect to which such costs were incurred;

The insurability of such punitive damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the Named Insured, the Insured, the Company, this policy or such Claim is located.

(Ex. 1 – Policy at Coverage Part A, Definition F.)

68.     The Policy defines the term "Specified Professional Services" as "those services stated in Item 4. Of the Declarations rendered for others for a fee." (Ex. 1 – Policy at Coverage Part A, Definition S; Ex. 6 – 9/6/2020 Order, FOF ¶48.)

69.     Item 4 of the Policy Declarations described the Specified Professional Services of DSLM as "Financial Case Management Services to Trust Accounts and Conservatorships." (Ex. 1 – Policy at Declarations, Item 4; Ex. 6 – 9/6/2020 Order, FOF ¶50.)

70.     The Policy defines the term "Wrongful Act" as "a negligent act, error or omission in Specified Professional Services." (Ex. 1 – Policy at Coverage Part A, Definition V; Ex. 6 – 9/6/2020 Order, FOF ¶51.)

71.     The Policy's Insuring Agreement, Coverage A – Professional Liability Coverage provides:

Coverage A – Professional Liability Coverage – Claims Made Coverage:

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5.A. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to the Section Claims A., Claims Reporting provision,

By reason of:

1.  A Wrongful Act; or

2.  A Personal Injury;[3]

In the Performance of Specified Professional Services rendered or that should have been rendered by the Insured or by any person for whose Wrongful Act or Personal Injury the Insured is legally responsible,

Provided:

a.  The entirety of such Wrongful Act(s) or Personal Injury(ies) happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 5.A. of the Declarations and before the end of the Policy Period; and

b.  Prior to the effective date of this Coverage Part the Insured had no knowledge of such Wrongful Act(s) or Personal Injury(ies) or any fact, circumstance, situation or incident, which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

(Ex. 1 – Policy at Coverage Part A, Insuring Agreement; Ex. 6 – 9/6/2020 Order, FOF ¶52.)

72.    The Policy's Multiple Insureds, Claims and Claimants provision states:

Multiple Insureds, Claims and Claimants:  The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.A. of the Declarations. More than one Claim arising out of a single Wrongful Act, Personal Injury or offense or a series of related Wrongful Acts, Personal Injuries or offenses shall be considered a single Claim.  All such Claims, whenever made, shall be treated as a single Claim.  Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act, Personal Injury or offense is made.

---

[3] The Underlying Lawsuit does not involve a "Personal Injury," defined by the Policy as:

1.  Libel, slander or defamation;
2.  Invasion of or infringement of the right of privacy or publicity;
3.  Malicious prosecution or abuse of process; or
4.  Humiliation or infliction of emotional distress;

Committed in the performance of Specified Professional Services.

(Ex. 1 – Policy at Coverage Part A, Definition N; Ex. 6 – 9/6/2020 Order, FOF ¶54.)

41

(Ex. 1 – Policy at Coverage Part A, Limits of Liability, F; Ex. 6 – 9/6/2020 Order, FOF ¶53.)

73.    The Discovery Clause of the Policy states:

If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1.    The description of the specific Occurrence or offense;

2.    The date on which such Occurrence or offense took place;

3.    The injury or damage which has or may result from such Occurrence or offense;

4.    The identity of any injured persons; and

5.    The date and circumstances by which the Insured first became aware of such Occurrence or offense.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, the Company at its sole option, may investigate such specific Occurrence or offense. Such matter shall be subject to all terms, conditions and provisions in this Coverage Part as applicable to a Claim.

(Ex. 1 – Policy at Coverage Part A, Claims, B.)

74.    Exclusion J of the Policy, provides:

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment . . .

J.    Based upon, arising out of, or in any way involving:

    1.  Conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest or fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:

        a.  The strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured that constitutes a willful violation of any statute or regulation; or

        b.  Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation . . . .

(Ex. 1 – Policy at Coverage Part A, Exclusion J; Ex. 6 – 9/6/2020 Order, FOF ¶55.)

    75.    Exclusion P of the Policy, provides:

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment . . .

    P.  Based upon or arising out of any conversion, misappropriation, commingling or defalcation of funds or property.

(Ex. 1 – Policy at Coverage Part A, Exclusion P; Ex. 6 – 9/6/2020 Order, FOF ¶56.)

    76.    The Declarations of the Policy contain the following notice:

This is a duty to defend policy. Additionally, all Coverage Parts of this policy contain provisions that reduce the Limits of Liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless otherwise endorsed. Please read the policy carefully.

(Ex. 1 – Policy at Declarations, 1.)

    77.    The Policy contains the following:

Defense, Investigation and Settlement of Claims: With respect to coverage hereunder, the Company shall have the right and duty to defend the Insured and to investigate any Claim and Disciplinary Proceeding to which coverage under this Coverage Part applies pursuant to the following provisions:

    1.  Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.A. and 7. of the Declarations. Such Claim Expenses shall reduce the

applicable Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in Item 5.A. and 7. of the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

(Ex. 1 – Policy at Coverage Part A, Defense, Settlements and Claim Expenses, A.)

### Evanston's Reservation of Rights, Rescission of the Policy and Continuing Defense of its Insureds

78.    In March 2017, Bennet provided notice to Evanston of Donisthorpe's suspected embezzlement of client funds.  (Ex. 6 – 9/6/2020 Order, FOF ¶85.)

79.    Markel Service, Incorporated, the claim service manager for Evanston, began an investigation after receiving Ms. Bennett's notice in March, 2017. (Ex. 6 – 9/6/2020 Order, FOF ¶87.)

80.    Evanston Insurance learned that Donisthorpe pleaded guilty to wire fraud and money laundering by no later than the first half of December, 2017. (Ex. 6 – 9/6/2020 Order, FOF ¶101.)

81.    On January 5, 2018, Evanston's counsel issued letters to DSLM (through Christopher Moya, the court-appointed liquidating receiver for DSLM), Bennett and Kerr indicating that Evanston would, subject to a reservation of rights, defend them against the lawsuits and demands (the "Underlying Claim") made against them in connection with Donisthorpe's embezzlement of DSLM client funds.  (True and correct copies of the reservation of rights letters to DSLM, Bennett and Kerr are attached as **Exhibits 9, 10 and 11**, respectfully; see also Ex. 6 – 9/6/2020 Order, FOF ¶93.)

82.    In the reservation of rights letters, Evanston specifically reserved the right to rescind the Policy based upon material misrepresentations in DSLM's application for the Policy. (Ex. 9 at 12; Ex. 6 – 9/6/2020 Order, FOF ¶94; Ex. 10 at 12; Ex. 11 at 12.)

83.    Evanston also reserved its rights to deny coverage for the Underlying Claim based upon the Insured's knowledge of "Wrongful Acts, facts, circumstances, or incidents that would lead a reasonable person to conclude that a Claim was likely." (Ex. 9 at 11; Ex. 6 – 9/6/2020 Order, FOF ¶95; Ex. 10 at 11; Ex. 11 at 11.)

84.    Evanston also reserved the right to deny coverage for the Underlying Claim, based upon various policy exclusions, including Exclusions J and P.  (Ex. 9 at 11; Ex. 6 – 9/6/2020 Order, FOF ¶94; Ex. 10 at 11; Ex. 11 at 11.)

85.    On June 24, 2018, Evanston issued a letter to Moya as DSLM's receiver, asserting rescission of the Policy on the basis of Donisthorpe's and DSLM's misrepresentations in the application for the Policy.  (A true and correct copy of the rescission letter is attached as **Exhibit 12**; see also Ex. 6 – 9/6/2020 Order, FOF ¶¶97-98.)

86.    Included with the rescission letter was a check for $9,328.00, refunding the premium paid by DSLM for the Policy plus interest. (Ex. 6 – 9/6/2020 Order, FOF ¶99.)

87.    Notwithstanding Evanston's rescission of the Policy, Evanston continued (and continues to this day) to defend DSLM, Bennett and Kerr against the Underlying Claim subject to a complete reservation of its rights.

## Judge Brownings' Rulings in *Evanston v. DSLM*

88.    *Evanston v. DSLM* culminated in a bench trial before the Honorable Judge James O. Browning held on October 7-9, 2019.  (Ex. 6 – 9/6/2020 Order at 1.)

89.    On September 6, 2020, Judge Browning issued his Memorandum Opinion, Findings of Fact, Conclusions of Law in which he made the following conclusions of law:

a.    The Policy was not rescinded because Evanston waited too long to rescind (Ex. 6 – 9/6/2020 Order, Conclusion of Law ("COL") ¶56);

b.    Donisthorpe was not entitled to coverage because he could not satisfy the Policy's condition precedent to coverage that he had no knowledge of facts, circumstances, etc. that could give rise to a Claim  (Ex. 6 – 9/6/2020 Order, COL ¶60);

c.    Although the Court would conclude that Kerr was also not entitled to coverage under the Policy because she could not satisfy the Policy's condition precedent to coverage that she had no knowledge of facts, circumstances, etc. that could give rise to a Claim, it would issue no ruling vis-à-vis Kerr because of the Automatic Bankruptcy Stay, filed on October 4, 2019 (Ex. 6 – 9/6/2020 Order, COL ¶58);

d.    The no prior knowledge condition precedent of the Policy's Insuring Agreement did not "express a contractual intent to create a joint obligation," and therefore Donisthorpe's knowledge would not be imputed to Bennett (Ex. 6 – 9/6/2020 Order, COL ¶59);

e.    Opining that the New Mexico Supreme Court would apply the adverse interest doctrine in these circumstances, Donisthorpe's knowledge would not be imputed to DSLM (Ex. 6 – 9/6/2020 Order, COL ¶59);

    f.   Both DSLM and Bennett satisfied the Insuring Agreement's condition precedent  (Ex. 6 – 9/6/2020 Order, COL ¶¶59, 61);

    g.   Exclusions J and P did not bar coverage for DSLM or Bennett (Ex. 6 – 9/6/2020 Order, COL ¶¶64-67).

## COUNTERCLAIM

90.    As plaintiffs in the underlying lawsuit, *Graham v. DSLM,* Cameron Graham, as trustee for Andrew Graham ("Graham"), and Joseph Perez ("Perez") have an interest in the outcome of this action.

91.    Evanston seeks no affirmative relief from Graham or Perez other than to bind them to the outcome of this action

### COUNTERCLAIM – COUNT I
### Rescission[4]

In the Alternative to Counterclaim Counts II-X
(against DSLM, Donisthorpe, Kerr, Bennett, Kominiak, Mahar, Graham and Perez)

92.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

---

[4] Evanston acknowledges that in his September 6, 2020 Order, Judge Browning found that Evanston was not entitled to rescission.  Evanston will appeal the Order.  Therefore, out of an abundance of caution, Evanston repleads rescission against DSLM, Bennett, Donisthorpe, Kerr, Graham and Perez for the purpose of avoiding any waiver of rights by Evanston and to preserve any issues for appeal.

93. At the time Donisthorpe completed the Application, he knew that his scheme to misappropriate and convert over $4.9 million in DSLM client funds exposed DSLM to lawsuits. (Ex. 6 – 9/6/2020 Order, FOF ¶25.)

94. Based upon the representations and warranties made by Donisthorpe, individually and on behalf of DSLM, in the Application, Evanston issued the Policy. (Ex. 6 – 9/6/2020 Order, FOF ¶26.)

95. Had Evanston been aware of Donisthorpe's commingling, misappropriation and conversion of DSLM client funds, or even if funds were simply missing from DSLM client accounts, it would not have issued the Policy. (Ex. 6 – 9/6/2020 Order, FOF ¶27.)

96. On June 24, 2018, Evanston issued a letter to Moya as DSLM's receiver, asserting rescission of the Policy that enclosed a check for $9,328.00, refunding the premium paid by DSLM for the Policy plus interest. (Ex. 12; Ex. 6 – 9/6/2020 Order, FOF ¶¶97-99.)

97. Policy is rescinded and therefore void *ab initio*.

### COUNTERCLAIM – COUNT II
### Kominiak Does Not Qualify as an Insured Under the Policy

In the Alternative to Counterclaim Count I
(against Kominiak, Graham and Perez)

98. The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

99. In his Answer to Plaintiffs Second Amended Complaint in *Graham v. DSLM*, Kominiak denies that he acted as DSLM's CPA. (Kominiak Answer to Plaintiffs' Second Am. Class Action Complaint ("Kominiak Ans.") at ¶155. A true and correct copy of the Kominiak Ans. Is attached as **Exhibit 13**.)

48

100.    Kominiak is not and has never been a principal, partner, officer, director, trustee or shareholder of DSLM.

101.    Kominiak is not and has never been an employee or leased employee of DSLM.

102.    Kominiak is not and has never been an independent contractor of DSLM.

103.    Kominiak is not and has never been the heir, executor, assign, legal representative, lawful spouse or domestic partner of any person in any way affiliated with DSLM.

104.    Kominiak is not an Insured under the Policy.

## COUNTERCLAIM – COUNT III
### Kerr Does Not Qualify as an Insured Under the Policy

In the Alternative to Counterclaim Count I
<u>(against Kerr, Graham and Perez)</u>

105.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

106.    The Policy defines the term "Insured" to include "[t]he lawful spouse or Domestic Partner of each Insured in Item A.2. above, but only for each such Insured's liability as is otherwise covered herein."  (Ex. 1 – Policy at Coverage Part A, The Insured, A.7.)

107.    Kerr is therefore only an Insured to the extent coverage is provided to her husband, Donisthorpe.

108.    In his September 6, 2020 Order, Judge Browning found that Donisthorpe had no coverage for the Underlying Claim. (Ex. 6 – 9/6/2020 Order, COL ¶60.)

109.    Kerr is therefore not an Insured with respect to the Underlying Claim.

## COUNTERCLAIM – COUNT IV

**There Is No Coverage for the Underlying Claim Because the Second Condition Precedent of the Insuring Agreement Was Not Satisfied; The Insured Had Knowledge of Wrongful Acts, Facts and Circumstances to Reasonably Conclude that a Claim was Likely[5]**

In the Alternative to Counterclaim Count I
(against DSLM, Donisthorpe, Kerr, Bennett, Kominiak, Mahar, Graham and Perez)

110.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

111.    The second condition precedent for coverage under the Policy provides:

Prior to the effective date of this Coverage Part the Insured had no knowledge of such Wrongful Act(s) or Personal Injury(ies) or any fact, circumstance, situation or incident, which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

(Ex. 1 – Policy at Coverage Part A, Insuring Agreement; Ex. 6 – 9/6/2020 Order, FOF ¶52.)

112.    The Policy provides that "the unqualified word 'Insured,' either in the singular or plural" is intended to encompass DSLM and all other individuals and entities covered by the Policy.  (Ex. 1 – Policy at Coverage Part A, The Insured.)

113.    Prior to the effective date of the Policy, Donisthorpe had knowledge that his scheme to misappropriate and convert over $4.9 million in DSLM funds exposed DSLM to lawsuits.  (Ex. 6 – 9/6/2020 Order, FOF ¶52, COL ¶60.)

---

[5] Again, Evanston will appeal Judge Browning's September 6, 2020 Order in which he found that DSLM and Bennett have satisfied the Insuring Agreement's second condition precedent.  Evanston repleads this Count against DSLM, Bennett, Graham and Perez for the purpose of avoiding any waiver of rights by Evanston and to preserve any issues for appeal.

114.    Because Donisthorpe had knowledge of "fact[s], circumstance[s], situation[s] or incident[s], which [would] have led a reasonable person in the Insured's position to conclude that a Claim was likely," the "Insured," as defined by the Policy had such knowledge.

115.    The second condition precedent of the Policy's Insuring Agreement has not been satisfied and therefore DSLM, Donisthorpe, Kerr, Bennett, Mahar and Kominiak are not entitled to coverage under the Policy.

116.    Further, prior to the effective date of the Policy, Kerr had knowledge that her husband's scheme to misappropriate and convert over $4.9 million in DSLM funds exposed DSLM to lawsuits and therefore Kerr cannot satisfy the second condition precedent of the Policy's Insuring Agreement. (Ex. 6 – 9/6/2020 Order, COL ¶58.)

## COUNTERCLAIM – COUNT V
### Coverage for the Underlying Claim Is Barred by Exclusion P of the Policy[6]

In the Alternative to Counterclaim Count I
(against DSLM, Donisthorpe, Kerr, Bennett, Kominiak, Mahar, Graham and Perez)

117.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

118.    Exclusion P of the Policy, provides:

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment . . .

---

[6] Again, Evanston will appeal Judge Browning's September 6, 2020 Order in which he found, *inter alia,* that Exclusion J does not apply to DSLM or Bennett.  Evanston repleads this Count against DSLM, Bennett, Graham and Perez for the purpose of avoiding any waiver of rights by Evanston and to preserve any issues for appeal.

P.   Based upon or arising out of any conversion, misappropriation, commingling or defalcation of funds or property.

(Ex. 1 – Policy at Coverage Part A, Exclusion P; Ex. 6 – 9/6/2020 Order, FOF ¶56.)

119.   The *Graham v. DSLM* is based upon or arises out of DSLM's and Donisthorpe's conversion, misappropriation, commingling or defalcation of DSLM client funds.

120.   Coverage for the *Graham v. DSLM* is barred by Exclusion P.

## COUNTERCLAIM – COUNT VI
### Coverage for the Underlying Claim Is Barred by Exclusion J.1 of the Policy[7]

In the Alternative to Counterclaim Count I
(against Donisthorpe, Kerr, Bennett, Kominiak, Mahar, Graham and Perez)

121.   The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

122.   Exclusion J.1 of the Policy, provides:

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment . . .

J.   Based upon, arising out of, or in any way involving:

1.   Conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest or fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:

a.   The strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured that constitutes a willful violation of any statute or regulation; or

---

[7] Again, Evanston will appeal Judge Browning's September 6, 2020 Order in which he found, *inter alia,* that Exclusion J does not apply to DSLM or Bennett.  Evanston repleads this Count against DSLM, Bennett, Graham and Perez for the purpose of avoiding any waiver of rights by Evanston and to preserve any issues for appeal.

    b.  Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation

(Ex. 1 – Policy at Coverage Part A, Exclusion J.1; Ex. 6 – 9/6/2020 Order, FOF ¶55.)

123.    Exclusion J.1. precludes coverage for the Underlying Claim as respects Donisthorpe, Kerr, Bennett, Kominiak and Mahar because the Underlying Claim is based upon, arises out of, and involves Donisthorpe's intentional, willful, dishonest and/or fraudulent conduct and/or violation of statutes and regulations.

## COUNTERCLAIM – COUNT VII
### Coverage for the Underlying Claim Is Barred by Exclusion J.2. of the Policy

In the Alternative to Counterclaim Count I
<u>(against Donisthorpe, Kerr, Graham and Perez)</u>

124.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

125.    Exclusion J.2 of the Policy, provides:

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment . . .

J.  Based upon, arising out of, or in any way involving:

    * * *
2.  The gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled; provided, however, this exclusion shall not apply to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be any profit, remuneration or advantage to which such Insured was not legally entitled; provided, that any fact pertaining to any Insured shall not be imputed to any other Insured under this Coverage Part for the purpose of determining the applicability of this exclusion.

(Ex. 1 – Policy at Coverage Part A, Exclusion J.2.)

126.   Exclusion J.2. bars all coverage for Donisthorpe for the Underlying Claim.

127.   Exclusion J.2. bars indemnity coverage for Kerr for the Underlying Claim.

## COUNTERCLAIM – COUNT VIII

***Graham v. DSLM* and Any Other Demand/Lawsuit Arising Out of Donisthorpe's Embezzlement Scheme Are Deemed a Single Claim under the Policy, Subject to a Single $1 Million Each Claim Limit of Liability**

In the Alternative to Counterclaim Count I
(against DSLM, Donisthorpe, Kerr, Bennett, Kominiak, Mahar, Graham and Perez)

128.   The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

129.   In March 2017, Bennet provided notice to Evanston of Donisthorpe's suspected embezzlement of client funds.  (Ex. 6 – 9/6/2020 Order, FOF ¶85.)

130.   The Discovery Clause of the Policy provides, in pertinent part:

> If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. **If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company.**

(Ex. 1 – Policy at Coverage Part A, Claims, B.) (Emphasis added.)

131.   The Policy defines the term "Claim" as follows:

Claim means the Insured's receipt of:

1.   A written demand for money damages or remedial Specified Professional Services involving this Coverage Part, including a written demand that the Insured toll or waive a statute of limitations; or

2.  The service of suit or the institution of arbitration proceedings against the Insured;

Provided, however, Claim shall not include Disciplinary Proceeding.

(Ex. 1 – Policy at Coverage Part A, Definition B; Ex. 6 – 9/6/2020 Order, FOF ¶48.)

132.    Because the Policy defines the term "Claim" as the "service of suit," the Second Amended Complaint in *Graham v. DSLM* constitutes a single "Claim" regardless of the number of plaintiffs and regardless of the number of causes of action asserted.

133.    Pursuant to the Policy's Discovery Clause, the Underlying Claim – *Graham v. DSLM* is a Claim deemed first made in March 2017, when Bennett provided notice to Evanston of Donisthorpe's suspected embezzlement.

134.    The Policy's Multiple Insureds, Claims and Claimants provision states:

Multiple Insureds, Claims and Claimants:  The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.A. of the Declarations. **More than one Claim arising out of a single Wrongful Act, Personal Injury or offense or a series of related Wrongful Acts, Personal Injuries or offenses shall be considered a single Claim.**  All such Claims, whenever made, shall be treated as a single Claim.  Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act, Personal Injury or offense is made.

135.    (Ex. 1 – Policy at Coverage Part A, Limits of Liability, F; Ex. 6 – 9/6/2020 Order, FOF ¶53.) (Emphasis added.)

136.    The Policy defines the term "Wrongful Act" as "a negligent act, error or omission in Specified Professional Services." (Ex. 1 – Policy at Coverage Part A, Definition V; Ex. 6 – 9/6/2020 Order, FOF ¶51.)

137.   All of the causes of action asserted by the underlying plaintiffs in *Graham v. DSLM* arise out of the same Wrongful Act or offense or series of related Wrongful Acts and offenses.

138.   Pursuant to the Policy's Discovery clause and Multiple Insureds, Claims and Claimants Clause, all lawsuits and written demands arising out of Donisthorpe's embezzlement of DSLM client funds, including but not limited to *Graham v. DSLM* and *Ayudado Guardians, Inc. v. Desert State Life Management, et al.,* ("*Ayudado Guardians v. DSLM*"), No. D-202-CV-2017-03997 (Dist. Ct. Bernalillo Cnty. N.M. filed June 6, 2017) (collectively, the "Underlying Claim") constitute a single Claim first made on the date in March 2017 when Bennett provided notice to Evanston of Donisthorpe's suspected embezzlement of DSLM client funds.  (A true and correct copy of the complaint from *Ayudado Guardians v. DSLM* is attached as **Exhibit 14**.)

139.   The Policy's  Limit of Liability – Professional Liability Coverage – Each Claim clause, states in pertinent part:

> The total liability of the Company under this Coverage Part for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period … shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Each Claim.

(Ex. 1 – Policy at Coverage Part A, Limits of Liability A.)

140.   The Each Claim Limit of Liability stated in Item 5.A. of the Declarations is $1,000,000.  (Ex. 1 – Policy at Declarations, Item 5.A.)

141.   The Limit of Liability (if any) applicable to the Underlying Claim is $1 million.

## COUNTERCLAIM – COUNT IX

### Claim Expenses Incurred in Defense of the Underlying Claim
### Reduce the Applicable Limit of Liability

In the Alternative to Counterclaim Count I
(against DSLM, Donisthorpe, Kerr, Bennett, Kominiak, Mahar, Graham and Perez)

142.    The allegations set forth Paragraphs 1 through 91 and 128 through 141 above are

re-alleged and incorporated as if fully set forth herein.

143.    The Declarations of the Policy contain the following notice:

This is a duty to defend policy. Additionally, **all Coverage Parts of this policy contain provisions that reduce the Limits of Liability stated in the policy by the costs of legal defense** and permit legal defense costs to be applied against the deductible, unless otherwise endorsed. Please read the policy carefully.

(Ex. 1 – Policy at Declarations, 1.) (Emphasis added.)

144.    The Policy's Limit of Liability – Professional Liability Coverage – Each Claim

clause provides, in pertinent part:

The total liability of the Company under this Coverage Part **for the combined total of Damages and Claim Expenses** for each Claim first made against the Insured during the Policy Period … shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Each Claim.

(Ex. 1 – Policy at Coverage Part A, Limits of Liability A.) (Emphasis added.)

145.    The Policy's Defense, Investigation and Settlement of Claims clause

provides, *inter alia*:

Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.A. and 7. of the Declarations. Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible.

(Ex. 1 – Policy at Coverage Part A, Defense, Settlements and Claim Expenses, A.)

146.    All Claims Expenses incurred defending any Insured under the Policy reduce the applicable Limit of Liability (if any) available for payment of any judgment or settlement of the Underlying Claim.

**COUNTERCLAIM – COUNT X**

**Treble Damages and Plaintiffs' Attorneys' Fees and Costs
Are Not Insured "Damages" Under the Policy**

In the Alternative to Counterclaim Count I
(against DSLM, Donisthorpe, Kerr, Bennett, Kominiak, Mahar, Graham and Perez)

147.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

148.    In *Graham v. DSLM,* in addition to actual damages, plaintiffs seek treble damages and plaintiffs' attorneys' fees and costs.  (Ex. 4 at 39.)

149.    The Policy's definition of the term "Damages" specifically excludes both "multiplied portions of damages in excess of actual damages, including trebling of damages" and "attorneys' fees of a party other than an Insured." (Ex. 1 – Policy at Coverage Part A, Definition F.)

150.    In the event the plaintiffs in *Graham v. DSLM* are awarded any treble damages or attorneys' fees and costs, such amounts do not constitute insured "Damages" under the Policy.

**THIRD PARTY COMPLAINT**

151.    As plaintiffs in the Underlying Claim – *Graham v. DSLM,* Charles Reynolds, on behalf of J.W. ("Reynolds"), Vincent Esquibel ("Esquibel"), Isaac Black, on behalf of and trustee for Jeffrey Black ("Black"), and Decades, LLC, on behalf of and as guardian for Dale Richards

58

("Decades") (collectively, the "Third Party Defendants") have an interest in the outcome of this insurance coverage action.

152.    Evanston seeks no affirmative relief from Third Party Defendants other than to bind them to the outcome of this action.

**COUNT I**
**Rescission**
In the Alternative to Counts II-X
(against Reynolds, Esquibel, Black and Decades)

153.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

154.    At the time Donisthorpe completed the Application, he knew that his scheme to misappropriate and convert over $4.9 million in DSLM client funds exposed DSLM to lawsuits. (Ex. 6 – 9/6/2020 Order, FOF ¶25.)

155.    Based upon the representations and warranties made by Donisthorpe, individually and on behalf of DSLM, in the Application, Evanston issued the Policy.  (Ex. 6 – 9/6/2020 Order, FOF ¶26.)

156.    Had Evanston been aware of Donisthorpe's commingling, misappropriation and conversion of DSLM client funds, or even if funds were simply missing from DSLM client accounts, it would not have issued the Policy.  (Ex. 6 – 9/6/2020 Order, FOF ¶27.)

157.    On June 24, 2018, Evanston issued a letter to Moya as DSLM's receiver, asserting rescission of the Policy that enclosed a check for $9,328.00, refunding the premium paid by DSLM for the Policy plus interest.  (Ex. 12; Ex. 6 – 9/6/2020 Order, FOF ¶¶97-99.)

158.    Policy is rescinded and thus void *ab initio*.

## COUNT II
## Kominiak Does Not Qualify as an Insured Under the Policy

In the Alternative to Count I
(against Reynolds, Esquibel, Black and Decades)

159.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

160.    In his Answer to Plaintiffs Second Amended Complaint in *Graham v. DSLM*, Kominiak denies that he acted DSLM's CPA.  (Ex. 13 at ¶155.)

161.    Kominiak is not and has never been a principal, partner, officer, director, trustee or shareholder of DSLM.

162.    Kominiak is not and has never been an employee or leased employee of DSLM.

163.    Kominiak is not and has never been an independent contractor of DSLM.

164.    Kominiak is not and has never been the heir, executor, assign, legal representative, lawful spouse or domestic partner of any person in any way affiliated with DSLM.

165.    Kominiak is not an Insured under the Policy.

## COUNT III
## Kerr Does Not Qualify as an Insured Under the Policy

In the Alternative to Count I
(against Reynolds, Esquibel, Black and Decades)

166.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

167.    The Policy defines the term "Insured" to include "[t]he lawful spouse or Domestic Partner of each Insured in Item A.2. above, but only for each such Insured's liability as is otherwise covered herein."  (Ex. 1 – Policy at Coverage Part A, The Insured, A.7.)

168.     Kerr is therefore only an Insured to the extent coverage is provided to her husband, Donisthorpe.

169.     In his September 6, 2020 Order, Judge Browning found that Donisthorpe had no coverage for the Underlying Claim. (Ex. 6 – 9/6/2020 Order, COL ¶60.)

170.     Kerr is therefore not an Insured with respect to the Underlying Claim.

### COUNT IV

**There Is No Coverage for the Underlying Claim Because the Second Condition Precedent of the Insuring Agreement Was Not Satisfied; The Insured Had Knowledge of Wrongful Acts, Facts and Circumstances to Reasonably Conclude that a Claim was Likely**

In the Alternative to Count I
(against Reynolds, Esquibel, Black and Decades)

171.     The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

172.     The second condition precedent for coverage under the Policy provides:

Prior to the effective date of this Coverage Part the Insured had no knowledge of such Wrongful Act(s) or Personal Injury(ies) or any fact, circumstance, situation or incident, which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

(Ex. 1 – Policy at Coverage Part A, Insuring Agreement; Ex. 6 – 9/6/2020 Order, FOF ¶52.)

173.     The Policy provides that "the unqualified word 'Insured,' either in the singular or plural" is intended to encompass DSLM and all other individuals and entities covered by the Policy.  (Ex. 1 – Policy at Coverage Part A, The Insured.)

174.     Prior to the effective date of the Policy, Donisthorpe had knowledge that his scheme to misappropriate and convert over $4.9 million in DSLM funds exposed DSLM to lawsuits.  (Ex. 6 – 9/6/2020 Order, FOF ¶52, COL ¶60.)

175.    Because Donisthorpe had knowledge of "fact[s], circumstance[s], situation[s] or incident[s], which [would] have led a reasonable person in the Insured's position to conclude that a Claim was likely," the "Insured," as defined by the Policy had such knowledge.

176.    The second condition precedent of the Policy's Insuring Agreement has not been satisfied and DSLM, Donisthorpe, Kerr, Bennett, Mahar and Kominiak are not entitled to coverage under the Policy.

177.    Prior to the effective date of the Policy, Kerr had knowledge that her husband's scheme to misappropriate and convert over $4.9 million in DSLM funds exposed DSLM to lawsuits and therefore Kerr cannot satisfy the second condition precedent of the Policy's Insuring Agreement. (Ex. 6 – 9/6/2020 Order, COL ¶58.)

## COUNT V
### Coverage for the Underlying Claim Is Barred by Exclusion P of the Policy

In the Alternative to Count I
(against Reynolds, Esquibel, Black and Decades)

178.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

179.    Exclusion P of the Policy, provides:

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment . . .

P.    Based upon or arising out of any conversion, misappropriation, commingling or defalcation of funds or property.

(Ex. 1 – Policy at Coverage Part A, Exclusion P; Ex. 6 – 9/6/2020 Order, FOF ¶56.)

180.    The Underlying Claim is based upon or arises out of DLSM's and Donisthorpe's conversion, misappropriation, commingling or defalcation of DSLM client funds.

181.    Coverage for the Underlying Claim is barred by Exclusion P.

**COUNT VI**

**Coverage for the Underlying Claim Is Barred by Exclusion J.1. of the Policy**

In the Alternative to Count I
(against Reynolds, Esquibel, Black and Decades)

182.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and

incorporated as if fully set forth herein.

183.    Exclusion J.1 of the Policy, provides:

With respect to all Coverages under this Coverage Part, this Coverage Part does not
apply to any Claim or Supplementary Payment . . .

J.    Based upon, arising out of, or in any way involving:

1.    Conduct of the Insured or at the Insured's direction that is intentional,
willful, dishonest or fraudulent or that constitutes a willful violation of any
statute or regulation; provided, however, this exclusion shall not apply to:

a.    The strictly vicarious liability of any Insured for the intentional, willful,
dishonest or fraudulent conduct of another Insured that constitutes a
willful violation of any statute or regulation; or

b.    Claim Expenses incurred until an allegation is adjudicated through a
finding by a trier-of-fact to be intentional, willful, dishonest or
fraudulent or a willful violation of any statute or regulation

(Ex. 1 – Policy at Coverage Part A, Exclusion J.1.; Ex. 6 – 9/6/2020 Order, FOF ¶55.)

184.    Exclusion J.1. precludes coverage for the Underlying Claim as respects

Donisthorpe, Kerr, Bennett, Kominiak and Mahar because the Underlying Claim is based upon,

arises out of, and involves Donisthorpe's intentional, willful, dishonest and/or fraudulent conduct

and/or violation of statutes and regulations.

## COUNT VII

### Coverage for the Underlying Claim Is Barred by Exclusion J.2. of the Policy

In the Alternative to Count I
(against Reynolds, Esquibel, Black and Decades)

185.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

186.    Exclusion J.2 of the Policy, provides:

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment . . .

J.   Based upon, arising out of, or in any way involving:

    * * *

2.   The gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled; provided, however, this exclusion shall not apply to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be any profit, remuneration or advantage to which such Insured was not legally entitled; provided, that any fact pertaining to any Insured shall not be imputed to any other Insured under this Coverage Part for the purpose of determining the applicability of this exclusion.

(Ex. 1 – Policy at Coverage Part A, Exclusion J.2)

187.    Exclusion J.2. bars all coverage for Donisthorpe for the Underlying Claim.

188.    Exclusion J.2. bars indemnity coverage for Kerr for the Underlying Claim.

## COUNT VIII

### *Graham v. DSLM* and Any Other Demand/Lawsuit Arising Out of Donisthorpe's Embezzlement Scheme Are Deemed a Single Claim under the Policy, Subject to a Single $1 Million Each Claim Limit of Liability

In the Alternative to Count I
(against Reynolds, Esquibel, Black and Decades)

189.    The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

190.    In March 2017, Bennet provided notice to Evanston of Donisthorpe's suspected embezzlement of client funds.  (Ex. 6 – 9/6/2020 Order, FOF ¶85.)

191.    The Discovery Clause of the Policy provides, in pertinent part:

> If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. **If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company.**

(Ex. 1 – Policy at Coverage Part A, Claims, B.) (Emphasis added.)

192.    The Policy defines the term "Claim" as follows:

Claim means the Insured's receipt of:

1. A written demand for money damages or remedial Specified Professional Services involving this Coverage Part, including a written demand that the Insured toll or waive a statute of limitations; or

2. The service of suit or the institution of arbitration proceedings against the Insured;

Provided, however, Claim shall not include Disciplinary Proceeding.

(Ex. 1 – Policy at Coverage Part A, Definition B; Ex. 6 – 9/6/2020 Order, FOF ¶48.)

193.    Because the Policy defines the term "Claim" as the "service of suit," the Second Amended Complaint in *Graham v. DSLM* constitutes a single "Claim" regardless of the number of plaintiffs and regardless of the number of causes of action asserted.

194.    Pursuant to the Policy's Discovery Clause, the Underlying Claim – *Graham v. DSLM* is a Claim deemed first made in March 2017, when Bennett provided notice to Evanston of Donisthorpe's suspected embezzlement.

195.    The Policy's Multiple Insureds, Claims and Claimants provision states:

> Multiple Insureds, Claims and Claimants:  The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.A. of the Declarations. **More than one Claim arising out of a single Wrongful Act, Personal Injury or offense or a series of related Wrongful Acts, Personal Injuries or offenses shall be considered a single Claim.**  All such Claims, whenever made, shall be treated as a single Claim.  Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act, Personal Injury or offense is made.

196.    (Ex. 1 – Policy at Coverage Part A, Limits of Liability, F; Ex. 6 – 9/6/2020 Order, FOF ¶53.) (Emphasis added.)

197.    The Policy defines the term "Wrongful Act" as "a negligent act, error or omission in Specified Professional Services." (Ex. 1 – Policy at Coverage Part A, Definition V; Ex. 6 – 9/6/2020 Order, FOF ¶51.)

198.    All of the causes of action asserted by the underlying plaintiffs in *Graham v. DSLM* arise out of the same Wrongful Act or offense or series of related Wrongful Acts and offenses.

199.    Pursuant to the Policy's Discovery clause and Multiple Insureds, Claims and Claimants Clause, all lawsuits and demands arising out of Donisthorpe's embezzlement of DSLM

client funds, including but not limited to *Graham v. DSLM* and *Ayudado Guardians, Inc. v. Desert State Life Management, et al.,* No. D-202-CV-2017-03997 (Dist. Ct. Bernalillo Cnty. N.M. filed June 6, 2017) (collectively, the "Underlying Claim"), constitute a single Claim first made on the date in March 2017 when Bennett provided notice to Evanston of Donisthorpe's suspected embezzlement of DSLM client funds.

200.    The Policy's  Limit of Liability – Professional Liability Coverage – Each Claim clause, states in pertinent part:

> The total liability of the Company under this Coverage Part for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period … shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Each Claim.

(Ex. 1 – Policy at Coverage Part A, Limits of Liability A.)

201.    The Each Claim Limit of Liability stated in Item 5.A. of the Declarations is $1,000,000.  (Ex. 1 – Policy at Declarations, Item 5.A.)

202.    The Limit of Liability (if any) applicable to the Underlying Claim is $1 million.

**COUNT IX**

**Claim Expenses Incurred in Defense of the Underlying Claim
Reduce the Applicable Limit of Liability**

In the Alternative to Count I
<u>(against Reynolds, Esquibel, Black and Decades)</u>

203.    The allegations set forth Paragraphs 1 through 91 and 183 through 196 above are re-alleged and incorporated as if fully set forth herein.

204.    The Declarations of the Policy contain the following notice:

This is a duty to defend policy. Additionally, **all Coverage Parts of this policy contain provisions that reduce the Limits of Liability stated in the policy by**

**the costs of legal defense** and permit legal defense costs to be applied against the deductible, unless otherwise endorsed. Please read the policy carefully.

(Ex. 1 – Policy at Declarations, 1.) (Emphasis added.)

205.   The Policy's Limit of Liability – Professional Liability Coverage – Each Claim clause provides, in pertinent part:

The total liability of the Company under this Coverage Part **for the combined total of Damages and Claim Expenses** for each Claim first made against the Insured during the Policy Period … shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Each Claim.

(Ex. 1 – Policy at Coverage Part A, Limits of Liability A.) (Emphasis added.)

206.   The Policy's Defense, Investigation and Settlement of Claims clause provides, *inter alia*:

Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.A. and 7. of the Declarations. Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible.

(Ex. 1 – Policy at Coverage Part A, Defense, Settlements and Claim Expenses, A.)

207.   All Claim Expenses incurred defending the Underlying Claim reduce the applicable Limit of Liability (if any) available for payment of any judgment or settlement of the Underlying Claim.

## COUNT X

**Treble Damages and Plaintiffs' Attorneys' Fees and Costs
Are Not Insured "Damages" Under the Policy**

In the Alternative to Count I
(against DSLM, Donisthorpe, Kerr, Bennett, Kominiak, Mahar, Graham and Perez)

208.   The allegations set forth Paragraphs 1 through 91 above are re-alleged and incorporated as if fully set forth herein.

68

209.    In *Graham v. DSLM,* in addition to actual damages, plaintiffs seek treble damages and plaintiffs' attorneys' fees and costs.  (Ex. 4 at 39.)

210.    The Policy's definition of the term "Damages" specifically excludes both "multiplied portions of damages in excess of actual damages, including trebling of damages" and "attorneys' fees of a party other than an Insured." (Ex. 1 – Policy at Coverage Part A, Definition F.)

211.    In the event the plaintiffs in *Graham v. DSLM* are awarded any treble damages or attorneys' fees and costs, such amounts are not insurable "Damages" under the Policy.

## **PRAYER FOR RELIEF**

WHEREFORE, having fully answered the Complaint, asserted its counterclaim against Plaintiffs, and asserted its Third Party Complaint against the Third Party Defendants, Evanston requests the following relief: (1) dismissal of Plaintiffs' action against Evanston with prejudice; and (2) such further relief that may be deemed just and equitable.  Evanston further requests that this Court adjudicate and declare the rights of the parties and that the Court:

1.    Find and declare that Specified Professions Professional Liability Insurance Policy No. EO86516, with a Policy Period of November 1, 2016 to November 1, 2017 (the "Policy") issued by Evanston to DSLM is rescinded and void *ab initio*.

Or, in the alternative:

2.    Find and declare that Evanston has no duty to pay on behalf of or indemnify any individual or entity for *Graham v. Desert State Life Management,* No. D-202-CV-2018-04655 (Bernalillo Cnty., N.M. Dist. Ct., filed June 20, 2018) ("*Graham v. DSLM*");

3.   Find and declare that Scott A. Kominiak ("Kominiak") is not an "Insured" under the Policy;

4.   Find and declare that Liane Kerr ("Kerr") is not an "Insured" under the Policy;

5.   Find and declare that Evanston has no duty to pay on behalf of or indemnify Paul A. Donisthorpe for *Graham v. DSLM*;

6.   Find and declare that Evanston has no duty to pay on behalf of or indemnify Kerr for *Graham v. DSLM*;

7.   Find and declare that Evanston has no duty to pay on behalf of or indemnify Kominiak for *Graham v. DSLM*;

8.   Find and declare that *Graham v. DSLM* constitutes a single "Claim," as defined by the Policy,  subject to a single $1 million Each Claim Limit of Liability;

9.   Find and declare that all lawsuits and written demands arising out of Donisthorpe's embezzlement of DSLM client funds, including but not limited to *Graham v. DSLM* and *Ayudado Guardians, Inc. v. Desert State Life Management, et al.,* No. D-202-CV-2017-03997 (Dist. Ct. Bernalillo Cnty. N.M. filed June 6, 2017), constitute a single Claim deemed first made on the date in March 2017 when Bennett provided notice to Evanston of Donisthorpe's suspected embezzlement of DSLM client funds;

10.  Find and declare that the applicable Limit of Liability (if any) available for payment of any settlement or judgment in connection with the Underlying Claim is reduced by Claim Expenses paid or incurred in connection with the Underlying Claim;

11.  Find and declare that any treble damages or plaintiffs' attorneys' fees or costs awarded in *Graham v. DSLM* are not insured "Damages" under the Policy.

Respectfully submitted

KELEHER & McLEOD, P.A.

By _/s/ Ann Maloney Conway_____
    Ann Maloney Conway
    Julianna T. Hopper
    P.O. Box AA
    Albuquerque, NM  87103
    Telephone:  (505) 346-4646
    Facsimile:  (505) 346-1370
    amc@keleher-law.com
    jth@keleher-law.com
    *Attorneys for Defendant Evanston Insurance Company*

4825-8969-3645, v. 1